**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

IGNACIO RAMOS *et al.*,

               Plaintiffs,

v.

FCA US LLC,

               Defendant.

**CASE NO. 1:17-CV-00973**

**ORDER DENYING PLAINTIFFS' MOTION FOR LEAVE TO AMEND COMPLAINT**

(Doc. No. 51)

## I.  Background

This is a lawsuit about two individuals who together purchased a new motor vehicle only to learn later that the vehicle had a defect and did not conform to the manufacturer's warranty. The two individuals are Plaintiffs Ignacio Ramos and Elizabeth Ramos ("Plaintiffs").  The vehicle is a 2013 Dodge Ram 1500.  The vehicle manufacturer is Defendant FCA US LLC ("FCA").

Plaintiffs sued FCA for breach of warranty and fraudulent concealment of the defect. Plaintiffs now move the Court for leave to amend the complaint.  The Court will deny the motion for the reasons discussed below.

## II.  Facts

On May 5, 2013, Plaintiffs purchased a new 2013 Dodge RAM 1500.  <u>See</u> Doc. No. 40 at 2.  The vehicle was manufactured and warranted by FCA.  <u>See id.</u>; Doc. No. 62-1 at 2.  After Plaintiffs purchased the vehicle, the vehicle exhibited problems.

On March 28, 2017, Plaintiffs sued FCA in California state court.  Plaintiffs' complaint pleaded three causes of action: (1) violation of California's Song-Beverly Consumer Warranty Act ("Song-Beverly Act") by breaching an express warranty; (2) violation of the Song-Beverly Act by breaching an implied warranty; and (3) fraudulent inducement-concealment ("fraudulent concealment") of a known defect.  <u>See</u> Doc. No. 1-1.  The fraudulent concealment claim is premised on the following five allegations: (1) when the vehicle was sold to Plaintiffs, the vehicle was equipped with a Totally Integrated Power Module ("TIPM"); (2) the TIPM in the vehicle was

defective; (3) when the vehicle was sold to Plaintiffs, FCA knew the TIPM was defective; (4) FCA concealed from Plaintiffs the fact that the TIPM was defective; and (5) if Plaintiffs had known about the defect with the TIPM, then Plaintiffs would not have purchased the vehicle. See generally id.

A TIPM is an electronic module located in numerous FCA-manufactured vehicles. See Doc. No. 62-1 at 3; Doc. No. 47-2 at 2. The TIPM serves as a power distribution system for the vehicle and includes relays, fuses, and printed circuit boards mounted in a protective case that is located in the vehicle's engine compartment. See Doc. No. 62-1 at 3; Doc. No. 47-2 at 2. The location of the TIPM in the engine compartment varies from vehicle to vehicle. See id. at 3. Each TIPM must be configured for the specific vehicle in which it is installed. See id. This is because TIPMs are specific to each FCA-manufactured vehicle. See id.

The complaint's allegations about the vehicle's defective TIPM are detailed and specific. For example, rather than alleging that the vehicle had a defective "electrical system" or a defective "computer system" or a defective "power distribution system," the complaint specifically alleges that Plaintiffs' vehicle was equipped with a defective TIPM. The complaint makes at least 141 references to TIPMs, including the TIPM in Plaintiffs' vehicle. Some of the allegations about the vehicle's defective TIPM and FCA's fraudulent concealment of the defect are as follows:

> ¶ 13.    The Subject Vehicle was factory-equipped with a Totally Integrated Power Module ("TIPM") which is located under the hood in the vehicle engine compartment. FCA US LLC equipped the Subject Vehicle with a TIPM that FCA US LLC refers to as the "TIPM 7."

> ¶ 16.    The TIPM installed in the Subject Vehicle is defective and thus fails to reliably control and distribute power to various vehicle electrical systems and component parts.

> ¶ 17.    As a result of the TIPM defect, the Subject Vehicle has made irregular rattling and buzzing noises.

> ¶ 20.    FCA US LLC had superior and exclusive knowledge of the TIPM defects, and knew or should have known that the defects were not known by or reasonably discoverable by Plaintiffs before Plaintiffs purchased or leased the Subject Vehicle.

> ¶ 92.    FCA US LLC has never disclosed the TIPM defect to Plaintiffs prior to the purchase of the Subject Vehicle or at any point during ownership of the Subject Vehicle, and FCA US LLC

has never instructed its dealerships to disclose the TIPM defect to drivers or potential purchasers or lessees of vehicles equipped with the TIPM-7.

¶ 93. The TIPM defect was not known or reasonably discoverable by the Plaintiffs before purchase or lease, or without experiencing the defect first hand and exposing themselves to an unreasonable safety risk.

¶ 96. As a result of FCA US LLC's inaction and silence, Plaintiffs were entirely unaware that Plaintiffs purchased, and continues to drive, unsafe and unreliable vehicles. As FCA US LLC knows a reasonable person would consider the TIPM defect important and would not purchase or lease a vehicle equipped with the TIPM defect were the defect disclosed in advance, or would pay substantially less for the vehicle.

¶ 141. FCA US LLC concealed a known defect from Plaintiffs. The defective component is called the totally integrated power module (or TIPM).

¶ 143. FCA US LLC intentionally failed to disclose the known TIPM defect, which was known only to it.

¶ 145. Plaintiffs reasonably, justifiably, and detrimentally relied on FCA US LLC's silence about the TIPM defect when deciding whether to purchase or lease a vehicle equipped with a TIPM-7, in part because FCA US LLC was, and still is, in a position of superior knowledge about the TIPM defects.

¶ 158. FCA US LLC's concealment of the TIPM defect was a substantial factor in causing Plaintiffs' harm.

¶ 159. The concealment substantially influenced Plaintiffs to purchase to Subject Vehicle; Plaintiffs would not have purchased the Subject Vehicle had the TIPM defect been disclosed prior to sale.

Doc. No. 1-1.

On July 20, 2017, FCA removed the state lawsuit to this Court on grounds of diversity jurisdiction. See 28 U.S.C. § 1332; Doc. No. 1. On October 17, 2017, Plaintiffs and FCA filed a joint scheduling report. See Doc. No. 7. In the report, Plaintiffs stated that they intended to conduct extensive discovery about the vehicle and its defects. Id. Plaintiffs also stated that they intended to retain an automotive expert. Id. On October 24, 2017, the Court conducted a scheduling conference with Plaintiffs and FCA. See Doc. No. 9. On October 30, 2017, the Court issued a scheduling order, which required motions to amend pleadings to be filed by November

17, 2017.  See Doc. No. 13.  The scheduling order informed the parties of the "good cause" standard under Rule 16(b)(4) for amending the scheduling order and pleadings:

> Any motions or stipulations requesting leave to amend the pleadings must be filed by no later than November 27, 2017.  The parties are advised that filing motions and/or stipulations requesting leave to amend the pleadings by November 27, 2017, does not reflect on the propriety of the amendment or imply good cause to modify the existing schedule, if necessary.  All proposed amendments must (A) be supported by good cause pursuant to Fed. R. Civ. P. 16(b) if the amendment requires any modification to the existing schedule, see Johnson v. Mammoth Recreations, Inc., 975 F.2d 604, 609 (9th Cir. 1992), and (B) establish, under Fed. R. Civ. P. 15(a), that such an amendment is not (1) prejudicial to the opposing party, (2) the product of undue delay, (3) proposed in bad faith, or (4) futile, see Foman v. Davis, 371 U.S. 178, 182 (1962).

Doc. No. 13 at 3-4.

During discovery, FCA retained an automotive expert, Jeff Richards.  Richards' expert report is dated June 18, 2018, and in his report, Richards opined that Plaintiffs' vehicle's problems were not related to a TIPM.  See Doc. No. 47-13 at 7.  Plaintiffs also retained an automotive expert, Darrell Blasjo.  Blasjo's expert report is dated June 26, 2018, and in his report, Blasjo never opined nor concluded that the vehicle was equipped with a TIPM, defective or otherwise, or that a TIPM was causing the problems with the vehicle.  See Doc. No. 47-9.  On June 29, 2018, Blasjo was deposed.  In his deposition, Blasjo testified that the problems with the vehicle did not involve a TIPM.  See Doc. No. 47-10 at 3.  On September 18, 2018, Richards was deposed.  In his deposition, Richards testified that FCA did not equip 2013 Dodge Ram 1500 vehicles with TIPMs.  See 47-13 at 3.

Plaintiffs also retained a corporate fraud expert, Barbara Luna.  On or around August 14, 2018, Luna issued an expert report, and in her report, Luna stated that Plaintiffs' vehicle was equipped with a defective PowerNet.  States Luna's report, "Plaintiffs allege that FCA concealed a known defect from Plaintiffs.  The defective component is called the PowerNet Architecture ("PNA"), which is the newer version of the Totally Integrated Power Module ("TIPM")."  Doc. No. 48-2 at 12.  Elsewhere in Luna's report, Luna makes many references to the PowerNet.  See generally id.  Luna's deposition was conducted on August 15, 2018.  In her deposition, Luna

discussed the TIPM and PowerNet technology and repeatedly testified that "now, we're dealing with PNA [PowerNet architecture]." Doc. No. 52-2 at 4.

On October 30, 2018, Plaintiffs filed an individual pretrial statement. See Doc. No. 33.[1] In the individual pretrial statement, Plaintiffs stated that they "request leave to file their First Amended Complaint." Id. at 13. The individual pretrial statement stated nothing further about amending the complaint, such as the proposed contents of the amended complaint, the legal basis for amending the complaint, why the request was being made after the amendment deadline, and whether Plaintiffs had discussed the requested amendment with FCA.

In November 2018, at least two of Plaintiffs' attorneys, Steve Mikhov and Amy Morse, were working as plaintiffs' counsel in an unrelated Song-Beverly Act lawsuit in the Superior Court of California, County of San Bernardino. See Doc. No. 52-3. The lawsuit was captioned Salah v. FCA UC LLC, Case No. CIVDS1708828. Id. On or around November 15, 2018, Morse signed a motion in Salah for leave to amend the complaint, and the motion was filed. Id. at 9; Doc. No. 52-1 at ¶ 4. In the Salah motion, the Salah plaintiffs made many of the same assertions and arguments that Plaintiffs are currently making in their motion to amend, which will be discussed infra. For example, the Salah plaintiffs asserted that they "recently" learned that their vehicle was not equipped with a TIPM:

> It has recently come to light that the defective component in the Subject Vehicle is not a TIPM as alleged in the original complaint. Rather, the Subject Vehicle contains what FCA US LLC refers to as the Fiat Compact electrical architecture, and its component BCM. Plaintiff has obtained this new information through exhaustive research by Plaintiff's counsel . . . . This new information provides adequate grounds for this Court to grant Plaintiff leave to amend his complaint accordingly.

Doc. No. 52-3 at 5.

---

[1] Plaintiffs' individual pretrial statement was filed in violation of Judge Ishii's case management procedures, which require the parties to file a joint pretrial statement, not an individual pretrial statement. See Case Management Procedures "Standard Information," Senior United States District Judge Anthony W. Ishii, http://www.caed.uscourts.gov/caednew/assets/File/Standard%20Information%20AWI%202019.pdf. Consequently, after Plaintiffs filed their individual pretrial statement, the Court ordered the parties to file a joint pretrial statement, see Doc. No. 34, which the parties did. See Doc. No. 40.

In December 2018, at least two of Plaintiffs' attorneys, Richard Wirtz and Steve Mikhov, were working as plaintiff's counsel in an unrelated Song-Beverly Act lawsuit in the Superior Court of California, County of Orange. See Doc. No. 52-4. The lawsuit was captioned Aqueveque v. FCA US LLC, Case No. 30-2016-00892778. Id. On or around December 13, 2018, the plaintiff in Aqueveque filed a motion for leave to amend the complaint. The motion in Aqueveque made many of the same assertions and arguments that Plaintiffs are currently making in their motion to amend, which, again, will be discussed infra. For example, the plaintiffs in Aqueveque asserted that they "recently discovered new evidence" due to the "performance of extensive research" by their attorneys that revealed that their vehicle was equipped with a PowerNet, not a TIPM:

> It has recently come to light that the defective component in the Subject Vehicle is not a TIPM as alleged in the original complaint. Rather, the Subject Vehicle contains what Defendant refers to as the PowerNet electrical architecture, and its component BCM. Plaintiff has obtained this new information through exhaustive research by Plaintiff's counsel . . . .

Id. at 3, 5.

On February 4, 2019, Plaintiffs and FCA filed their joint pretrial statement. See Doc. No. 40. Just as Plaintiffs did in their prior individual pretrial statement, Plaintiffs stated in the joint pretrial statement that they "request leave to file their First Amended Complaint." Id. at 17. And just as Plaintiffs failed to do in their prior individual pretrial statement, Plaintiffs failed to say anything meaningful in the joint pretrial statement about their request to amend the complaint.

On March 28, 2019, FCA filed a motion for partial summary judgment. See Doc. No. 47. The motion argued that Plaintiffs could not prevail on their fraudulent concealment claim because Plaintiffs' vehicle was never equipped with a TIPM. Then, on April 8, 2019 — which is just eleven days after FCA filed the motion for partial summary judgment — Plaintiffs filed their motion for leave amend the complaint. See Doc. No. 51. As will be discussed infra, Plaintiffs' motion requests leave to amend the complaint because Plaintiffs "recently" learned that their vehicle is equipped with a defective PowerNet, not a TIPM. See, e.g, id. at 7.

Trial is scheduled to begin on June 11, 2019, which is approximately one month away. See Doc. No. 45. Trial was originally scheduled to begin on January 8, 2019, but at the request of the parties' attorneys, the Court continued the trial approximately six months to June 11, 2019. See Doc. No. 13; Doc. No. 37.

### III. Legal Standard for Leave to Amend the Scheduling Order and Pleadings

Rule 16 requires district courts to issue scheduling orders in the lawsuits pending before them. See Fed. R. Civ. P. 16(b). One purpose of the scheduling order is to "limit the time to join other parties, amend the pleadings, complete discovery, and file motions." Fed. R. Civ. P. 16(b)(3). Once the court issues the scheduling order, the scheduling order "controls the course of the action unless the court modifies it." Fed. R. Civ. P. 16(d). Accordingly, a scheduling order is "not a frivolous piece of paper, idly entered, which can be cavalierly disregarded by counsel without peril." Johnson v. Mammoth Recreations, Inc., 975 F.2d 604, 610 (9th Cir. 1992) (citations omitted).

A scheduling order "may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). The "good cause" standard of Rule 16(b) focuses on whether the movant was diligent or careless. As stated by the Ninth Circuit:

> Rule 16(b)'s "good cause" standard primarily considers the diligence of the party seeking the amendment. The district court may modify the pretrial schedule if it cannot reasonably be met despite the diligence of the party seeking the extension. Moreover, carelessness is not compatible with a finding of diligence and offers no reason for a grant of relief. Although existence of a degree of prejudice to the party opposing the modification might supply additional reasons to deny a motion, the focus of the inquiry is upon the moving party's reasons for modification.

Johnson, 975 F.2d at 609 (citations omitted).

To satisfy the good cause standard, the movant must satisfy the following three requirements. Jackson v. Laureate, Inc., 186 F.R.D. 605, 608 (E.D. Cal. 1999). First, the movant was diligent in assisting the court in creating a workable scheduling order. Id. Second, the movant's noncompliance with a deadline in the scheduling order occurred or will occur because of developments which could not have been reasonably foreseen or anticipated at the time of the

scheduling conference, notwithstanding the movant's diligent efforts to comply with the deadline. Id. And third, the movant was diligent in moving for an amendment of the scheduling order once it became apparent to the movant that the movant could not comply with the order. Id. If the movant was not diligent, then the inquiry ends and the motion will be denied. Id. Therefore, parties must "diligently attempt to adhere to the schedule throughout the course of the litigation." Id. at 607.

If, and only if, there is good cause to modify the scheduling order pursuant to Rule 16(b), the court will then turn to Rule 15(a) to determine whether the movant's requested amendment to the pleading should be granted. Jackson, 186 F.R.D. at 607 ("As the Ninth Circuit explained in [Johnson], once the district court has filed a pretrial scheduling order pursuant to Rule 16 which establishes a timetable for amending pleadings, a motion seeking to amend pleadings is governed first by Rule 16(b), and only secondarily by Rule 15(a).").

Granting or denying leave to amend a complaint is in the discretion of the Court, Swanson v. United States Forest Service, 87 F.3d 339, 343 (9th Cir. 1996), but leave should be "freely give[n] when justice so requires." Fed. R. Civ. P. 15(a)(2); see also Morongo Band of Mission Indians v. Rose, 893 F.2d 1074, 1079 (9th Cir. 1990) (stating that the policy favoring amendments "is to be applied with extreme liberality"). "In exercising this discretion, a court must be guided by the underlying purpose of Rule 15 to facilitate decision on the merits, rather than on the pleadings or technicalities." United States v. Webb, 655 F.2d 977, 979 (9th Cir. 1981). The factors commonly considered when determining the propriety of a motion for leave to amend a pleading are: (1) bad faith; (2) undue delay; (3) prejudice to the opposing party; and (4) futility of amendment. Foman v. Davis, 371 U.S. 178, 182 (1962); Loehr v. Ventura Cty. Cmty. Coll. Dist., 743 F.2d 1310, 1319 (9th Cir. 1984). "These factors, however, are not of equal weight in that delay, by itself, is insufficient to justify denial of leave to amend." DCD Programs, Ltd. v. Leighton, 833 F.2d 183, 186 (9th Cir. 1986). "The other factors used to determine the propriety of a motion for leave to amend could each, independently, support a denial of leave to amend a pleading." Beecham v. City of W. Sacramento, Case No. 2:07–cv–01115, 2008 WL 3928231, at *1 (E.D. Cal. Aug. 25, 2008) (citing Lockheed Martin Corp. v. Network Solutions, Inc., 194 F.3d

8

980, 986 (9th Cir. 1999)).  Of these factors, "prejudice to the opposing party is the most important factor."  Jackson v. Bank of Hawaii, 902 F.2d 1385, 1387 (9th Cir. 1990).

There is no abuse of discretion "in denying a motion to amend where the movant presents no new facts but only new theories and provides no satisfactory explanation for his failure to fully develop his contentions originally."  Bonin v. Calderon, 59 F.3d 815, 845 (9th Cir. 1995); see also Allen v. City of Beverly Hills, 911 F.2d 367, 374 (9th Cir. 1990).

## IV.  Plaintiffs' Motion for Leave to Amend

**A.**    **Plaintiffs' arguments.**

Plaintiffs request leave to amend their complaint.  Specifically, Plaintiffs want to allege in their proposed amended complaint that their vehicle is equipped with a defective PowerNet, not a TIPM.  See Doc. No. 51.  Further, Plaintiffs want to allege that FCA fraudulently concealed the defective PowerNet from Plaintiffs.  See id.  Plaintiffs advance the following arguments to support their request.

First, although Plaintiffs and their attorneys "only recently" discovered that the vehicle is equipped with a PowerNet, not a TIPM, Plaintiffs were diligent in discovering the new information and requesting leave to amend the complaint.  Id. at 6 ("Plaintiffs' Motion is [*sic*] filed as soon as they became aware of the new information affecting their claims . . . .") (emphasis added); id. at 7 ("It was only recently that Plaintiffs discovered facts regarding the precise nature of the electrical architecture present in the Subject Vehicle.") (emphasis added); id. ("This Motion was drafted and filed as soon as Plaintiffs and their counsel realized the difference in name and similarity in defective nature of the electrical components.") (emphasis added); id. at 9 ("Plaintiffs' counsel did not become aware of the different naming of these components or which component was actually installed in the Subject Vehicle sooner and acted diligently in seeking amendment once these details became known.") (emphasis added).

Second, Plaintiffs' motion is not made in bad faith, and Plaintiffs have "no dilatory motive and do not seek a delay in the proceedings or additional discovery."  Id. at 7.

9

Third, FCA will not be unduly prejudiced by allowing Plaintiffs leave to amend the complaint because "[a]ll legal theories of recovery identified in Plaintiffs' proposed [amended complaint] are also identified in Plaintiffs' original Complaint." Id. at 8. This is because the differences between the TIPM allegations in the original complaint and the PowerNet allegations in the proposed amended complaint are merely "semantic" differences. Id. at 8. Further, FCA "is perfectly aware of the relationship between the TIPM and the PowerNet electrical architectures, including defects that are common to both the TIPM and PowerNet." Id.

Fourth, the proposed amended complaint is not futile because "Plaintiffs clearly have a colorable claim for relief." Id. at 8.

**B. Discussion.**

    1.    <u>Motion construed as motion to amend the scheduling order.</u>

Plaintiffs did not expressly move the Court to modify the scheduling order, although Plaintiffs do seem to recognize that their motion implicitly requests a modification of the scheduling order. See id. at 8 (Plaintiffs discussing Rule 16's good cause standard for modifying a scheduling order). The Court exercises its discretion to construe Plaintiffs' motion as a motion to modify the scheduling order, as well as a motion for leave to amend the complaint. See Orozco v. Midland Credit Mgmt. Inc., Case No. 2:12–cv–0258, 2013 WL 3941318, at *3 (E.D. Cal. July 30, 2013) ("[T]he court exercises its discretion to construe the instant motion [to amend the complaint] as one to amend the scheduling order."); see also Zest IP Holdings, LLC v. Implant Direct Mfg., LLC, Case No. 10-cv-0541, 2012 WL 175411, at *1 n.1 (S.D. Cal. Jan. 2012) (concluding that the Ninth Circuit's decision in Johnson permits "construing a motion to amend a pleading under Rule 15 as a motion to modify a scheduling order under Rule 16").

    2.    <u>No good cause under Rule 16.</u>

A scheduling order "may be modified only for good cause." Fed. R. Civ. P. 16(b)(4). Good cause does not exist if the movant did not diligently seek modification of the scheduling order once it became apparent that the movant could not comply with the scheduling order. See Johnson, 975 F.2d at 609; Jackson, 186 F.R.D. at 607.

Here, Plaintiffs were not diligent in requesting a modification of the scheduling order. Several months before Plaintiffs filed their motion, Plaintiffs — through their attorneys — knew or should have known that the vehicle was equipped with a PowerNet, not a TIPM. This conclusion is inescapable in light of the following facts:

(1) Approximately <u>ten months before</u> Plaintiffs filed their motion, Richards opined in his expert report that Plaintiffs' vehicle's problems were not related to a TIPM.

(2) Approximately <u>ten months before</u> Plaintiffs filed their motion, Blasjo indicated in his expert report that the vehicle's problems were not related to a TIPM.

(3) Approximately <u>ten months before</u> Plaintiffs filed their motion, Blasjo testified in his deposition that the vehicle's problems did not involve a TIPM.

(4) Approximately <u>eight months before</u> Plaintiffs filed their motion, Luna opined in her expert report and testified in her deposition that the vehicle was equipped with a PowerNet.

(5) Approximately <u>seven months before</u> Plaintiffs filed their motion, Richards testified that FCA did not equip 2013 Dodge Ram 1500 vehicles with TIPMs.

(6) Approximately <u>five months before</u> Plaintiffs filed their motion, some of Plaintiffs' attorneys filed a motion to amend a complaint in the <u>Salah</u> lawsuit. The attorneys premised the motion on the assertion that they just "recently" learned that that "the defective component in the Subject Vehicle is not a TIPM as alleged in the original complaint." Doc. No. 52-3 at 5.

(7) Approximately <u>four months before</u> Plaintiffs filed their motion, some of Plaintiffs' attorneys filed a motion to amend a complaint in the <u>Aqueveque</u> lawsuit. The attorneys premised the motion on the assertion that they just "recently" learned "that the defective component in the Subject Vehicle is not a TIPM as alleged in the original complaint" but was, instead, a defective PowerNet. Doc. No. 52-4 at 3.

It is likely that Plaintiffs contemplated amending their complaint at least five months before moving to do so. It is also likely that FCA's motion for partial summary judgment

11

prompted, to some notable degree, Plaintiffs to finally file the motion.  These inferences are strongly supported by the following facts:

> (8)    Approximately <u>five months before</u> Plaintiffs filed their motion, Plaintiffs stated in their individual pretrial statement that they "request leave to file their First Amended Complaint."  Doc. No. 33 at 13.

> (9)    Approximately <u>two months before</u> Plaintiffs filed their motion, Plaintiffs stated in the parties' joint pretrial statement that Plaintiffs "request leave to file their First Amended Complaint."  Doc. No. 40 at 17.

> (10)    Just <u>eleven days after</u> FCA filed its motion for partial summary judgment, Plaintiffs finally filed their motion for leave to amend.

In their motion and reply, Plaintiffs avoid confronting the foregoing facts, which is indicative of the hollowness of Plaintiffs' factual assertions and arguments.  For example, Plaintiffs repeatedly assert that they "recently" discovered that the vehicle was equipped with a PowerNet, not a TIPM, but Plaintiffs totally avoid explaining when, exactly, the discovery occurred.  Likewise, Plaintiffs repeatedly assert that they learned about the PowerNet due to their attorneys' extensive research and diligence, but Plaintiffs totally avoid explaining how, exactly, the discovery occurred.

Moreover, not only are many of Plaintiffs' factual assertions hollow, but some of the assertions appear to be false.  For example, Plaintiffs assert that they filed their motion "as soon as they became aware of the new information affecting their claims," Doc. No. 51 at 7, and Plaintiffs' attorneys "did not become aware of the different naming of these components or which component was actually installed in the Subject Vehicle sooner and acted diligently in seeking amendment once these details became known."  <u>Id.</u> at 9.  But these assertions are totally devoid of evidentiary support, which is not surprising because the assertions are clearly contradicted by the evidence.  For example, between approximately seven and ten months before Plaintiffs filed their motion, the experts — Blasjo, Richards, and Luna — testified and opined that the vehicle was equipped with a PowerNet, not a TIPM.  So the following rhetorical questions must be asked: Did Plaintiffs' attorneys not attend the expert depositions, and did Plaintiffs' attorneys not review the deposition

transcripts and expert reports until shortly before filing the motion?  Regardless of whether those questions are answered in the affirmative or the negative, the answers will reflect a lack of diligence.

Because Plaintiffs were not diligent in requesting a modification of the scheduling order, the Court concludes that there is not good cause for modifying the scheduling order.  See Rule 16(b)(4); Johnson, 975 F.2d at 609; Jackson, 186 F.R.D. at 608.  Accordingly, the Court need not address whether Plaintiffs satisfied Rule 15(a)(2)'s standard for amending the complaint, and the Court will deny Plaintiffs' motion for leave to amend.

## **ORDER**

Accordingly, IT IS HEREBY ORDERED that Plaintiffs' motion for leave to amend (Doc. No. 51) is DENIED.

IT IS SO ORDERED.

Dated:   May 14, 2019   

_____
SENIOR  DISTRICT  JUDGE